case number 20-3073 united states of america versus juan jose martinez vega also known as chiguero also known as gentile alves patino at balance mr gilbert ready at balance mr richmond ready i believe morning counsel mr gilbert please proceed when you're ready thank you your honor uh may please the court my name is richard gilbert and i have represented mr martinez vegas since his in 2006 that means i represented him at the trial during the first appeal before this court and on the resentencing i know from experience that the direction this argument will take will depend primarily on what the court is interested in discussing but let me just say at the outset that i believe that there are two important legal issues that are distinct but they depend on which category a putative participant uh you think is uh qualifies for the the uh aggressor the aggravating role i do think that that's not been particularly set forth with clarity by either the district court or frankly by the prosecution in its brief but one category of course would be people who whom i have described as employees of mr martinez vega patently if he's moving literally tons and tons of material uh he's going to need people to help him with that whether it's other vehicles whether it's other boats whether it's loading unloading and so forth but as set forth in our brief um i believe that the issue is what is the appropriate mens rea and i've argued that the only mens rea that would be a is if the participants knew or intended that the drugs would be transported or imported into the united states um i'm aware that in the original appeal at footnote number nine the court specifically sort of rejected my argument that the mens rea had to be the same as the defendants but it did not in that footnote suggest what other mens rea might be applicable um the district court has never uh articulated a different mens rea despite a specific request on my part at the end of the evidentiary hearing that if the court disagreed with what we asserted was the mens rea that the court at least made clear what that was and of course the court never did express a different mens rea so i i think if you um um i think you have to decide that if you're as being participants uh in the conspiracy the second issue uh has to do with the what we've been calling the re-insertato witnesses the cooperating witnesses by the government from colombia and i think the issue there is whether this court is going to adopt the definition of control uh from united states versus salinas which is a case we cited at page eight of our reply brief uh essentially that says that you control someone when you tell them what to do when to do it and where to do it uh with respect to the question of mens rea uh i i do want to caution the court i i know that in finding that uh mr martinez vega had the requisite knowledge the court at one point talked about common knowledge uh that fart drugs were going to be banned in the united states um but i think that the court was drawing that basically on what it perceived the status of mr martinez vega within the farc to be uh and i think if you extend that idea common knowledge extends all the way down to uneducated young men from the village who might be assisting mr martinez vega on a particular trip i think what the court is essentially doing is creating a presumption um that if you're transporting drugs or trafficking in drugs in colombia that you know they're going to the united states and i think that would be impermissible of court to do that yes mr gilbert in in your view did the district court need to identify a specific participant in order for the supervisor enhancement to be valid um well with respect to the category i've been discussing i think the answer to that is no uh because we don't know who those people were and there's no way the judge could have said well you know it was gilierno lopez um now it might be different if mr martinez vega had some trusted lieutenant uh that was with him on all his trips and and so forth and you do see that sort of thing happen in some drug cases um but i think it would have been sufficient for the judge uh if the mens rea had existed for the judge to say all those people that helped him uh move all those uniforms and weapons uh in the boats were participants because the drugs were coming back and somehow they knew there were drugs inside the bags and that how would you how how do you demonstrate mens rea with respect to a group of people or to a group of individuals that are not specifically identified um well i think and have i think you'd have to have at least some evidence it after all it is the government's burden you'd have to have some evidence that these people uh you know had the requisite mens rea i i know the government has argued that um there's an issue of willful blindness but i think as we talked about in our reply brief i think the had to show something more uh than just a substantial likelihood of the risk that the drugs would be going to the united states um i i do think it's uh the court has cited to an earlier martinez case not my defendant but the from 2007 um and i i think the court has previously ignored significant differences most importantly that the drugs in that case were seized after crossing the land border between um honduras and guatemala so they were in central america and i think that the expert testimony both in that case in this case is clear that if the drugs are going through central america they are in fact going to the united states um but that was complete that was not the fact here and uh you know if a if an exhibit or a chart has been introduced in evidence i i don't think it's necessary that its evidentiary value be limited to that which was expressly talked about uh at the trial and in this particular case i'm referring to the government exhibit 320 c um which is a map showing the flows of cocaine around the world uh back during the time of of this conspiracy uh it does appear it doesn't appear in our documents in this appeal but it does appear uh for in the original uh appendix at page 1802 you can see that map and no at no point does anybody uh the district court the government talk about all of those flows of cocaine coming out of the north eastern part of south america and going to africa or europe um and so that's where these drugs would have been in end up going to venezuela as i've tried to describe the geography of beachada and that part of columbia uh i would if there are no other questions i'd like to reserve uh the remaining two minutes i just have one quick question for you so um is is it not would it not be enough if there's testimony to the effect that everybody in the area knew that the destination of the drugs was the united states and that testimony was not refuted can't that kind of evidence be enough to show that the mens rea that you identify as the mens rea that you think is the requisite one would have been met um well it depends on the nature of the testimony that everybody in the area knew um i mean if there's any sort of direct evidence of that then i would agree uh one sort of evidence might be if if the village was awash in dollars for example uh perhaps that would be an argument that look you you must have known that the united states was involved here but but there isn't any of that evidence uh and i and i don't think that you can just sort of sit there and assume that every little villager or young man growing up in a village on the river would have known something that was known by the higher ups in the FARC because remember going back to uh colonel Alvarez Ochoa's testimony the FARC made it a point not to advertise its drug trafficking okay make sure my colleagues don't have additional questions for you Mr. Gilbert we'll give you some time for rebuttal thank you thank you Mr. Gilbert Mr. Richman good morning may i please the court my name is Jason Richman i'm an assistant united states attorney in the southern district of new york i'm a special assistant united states attorney for purposes of this case in the district of columbia i did not represent the government at the trial the original sentencing or the original appeal below but i did represent the government at the resentencing in this matter and on appeal when this court first sent this case remanded this case back to judge Hogan it remanded it with an instruction that the requisite findings as to the second and third elements of the aggravating role enhancement under guideline 3b 1.1 on remand judge Hogan did exactly that first the appellant abandoned his challenge to the third element that the criminal enterprise was otherwise extensive and judge Hogan noted that in ruling on remand and as to the second prong that there was a judge Hogan repeatedly over the course of at least two proceedings referenced that standard he reviewed the evidence from a trial that he presided over a multi-week trial he presided over that established just that fact and then he came to a conclusion that was supported by those facts and by the law in determining that at least one such participant existed that evidence came from among others the four cooperating witnesses who testified specifically about their interactions with Mr. Martinez Vega three of those witnesses Mr. Restrepo, Mr. Parik Diaz and Ms. Ortiz all testified specifically both about their own knowledge that cocaine was destined for the United States and about specific acts that the appellant had told them to do the fourth cooperating Mr. Bolas testified more broadly I would say about his history with the defendant with the appellant and about his own knowledge again that cocaine distributed by the FARC was destined for the United States judge Hogan also reviewed expert testimony concerning the fact that most of the cocaine consumed came from Colombia which again could lead to a reasonable inference that most of the individuals involved what is the evidence of this court you think that this court was relying on to show that the defendant supervised the cooperating witnesses I'm missing it of course your honor so I could cite to a few different places judge so first your honor I think sort of the maybe the neatest place to refer would be to the this court's uh first opinion in this matter and in that opinion your honor there was reference to uh testimony of Mr. Parik Diaz who had suggested that the defendant may have had a troop that the defendant had guards and that there were many people supervised Miss Ortiz testified that the defendant was the leader or in charge of the group Mr. Restrepo testified explicitly that the defendant was quote like our commander our immediately immediate what about with respect to drugs going to the United States yeah absolutely your honor so I could go one by one for each of those witnesses for Mr. Parik Diaz your honor this is at the supplemental appendix page 169 he testified that he was told that cocaine quote was sent over to the Americans Mr. Restrepo your honor testified uh this is at appendix pages 256 and 257 that more than one leader of the FARC had told him that cocaine was uh Miss Ortiz your honor at appendix pages 196 and 197 testified about seeing U.S. dollars when she was with the FARC in addition your honor we cite at our brief uh at page 18 footnote 4 other testimony and it was not as focused on this appellant at trial but other cooperating witnesses who testified one was Alexis Perez who testified that it was quote normal to hear the comments that the cocaine was coming to the United States because it said that that is the country that most consumes it uh specifically Perez said that she heard a former FARC leader say that the cocaine was quote all coming to the United States um Mr. Bolas your honor who was another cooperating witness who testified that he discussed U.S. currency with the appellant specifically that he paid him in U.S. dollars so and that's at sorry judge that's at supplemental appendix pages 266 to 292 so the the record is replete with references to the destination of the cocaine being the United States both from these witnesses and I think importantly sort of inferentially your honor to other people involved getting at judge Rao's question I think the idea that all of these people were around all these people were supervised and I think the appellant now admits that he did supervise people um but there's a fair inference it certainly was not clear error for judge Hoban to rely on the circumstantial evidence of knowledge of some of those other folks did the government and the defense agree in the district court that the mens rea the requisite mens rea element concerned knowledge of the drugs destination being the United States thank you your honor we we do agree for purposes of this uh proceeding that we have met that burden I will say the appellant said that is the burden I do agree that that is the burden your honor yes that that is there is a world in which your honor we could have proven that the participants had participated in material support of the FARC or a firearms offense perhaps that was related to this conduct that is not the case in this case we haven't made that argument I'm not making that argument today um as Mr. Gilbert referenced at one of the proceedings and I believe it was the August 2020 hearing and not the actual resentencing he did make explicit to Judge Hogan that if Judge Hogan to issue a written order to that effect that obviously did not happen and the government has not argued anything to the contrary and we don't today and Judge Hogan repeatedly your honor at both proceedings referenced that he needed to find someone had the necessary mens rea he references crimes that affected the United States he referenced what he needed to find to define participants so the the question I have is on the last point you made which is where the district court joined issue with where it sounds like the parties were to the effect that the relevant mens rea question is whether there was knowledge among the participants that the destination of the drugs was the United States it seems like everybody sort of had that in mind and there were references to that effect but what where's the best place to look to note that the district court had that understanding as well sure I think one place to look would be at appendix at page 338 judge and judge Hogan at that reference he said without going through the rest of the individuals there are many others just asking about one other as to the issue of whether you can import their knowledge of whatever offense they were committing would affect the United States and again your honor Mr. Gilbert below and I don't have that site in front of me but did say outlined what he argued was the requisite mens rea and did say to the district court if you disagree we do request that you put that explicitly and during the course in context of judge Hogan's evaluation of what a participant was what the necessary mens rea was he does reference implicitly and otherwise sort of the need to find the facts we're talking about and yeah and I think absent other questions from the court the government would rest on its submission I'll make sure my colleagues don't have additional questions for you Mr. Richman tell me again where you think the reference you just gave uh wasn't ringing true to me where do you think the best evidence is that connects the district court's understanding of the mens rea test and the district court saying pursuant to that understanding I am finding that this or these participants or these cooperating witnesses were supervised by the defendant and they all understand where the drugs were going with respect to that supervision where where is that I mean your answer was a little bit elusive and I'm not really understand where did the district see if a district court has a very understanding there's a fight over mens rea and I got to have a finding to protect the record district court judges normally know how to do that quite well where is that that pithy finding that says oh here's the finding you want I can't find it sure thank you judge so I think it's in a couple places sort of pieced together from the record one is that no wait is there a place where you don't have to piece things together where there's just this pithy finding and the district says you don't want to protect my record here's the finding you're under the government at appendix 352 judge uh the district court says finding that the government has met its burden no that's a conclusion I'm if there is something just so you know what I'd like to see if there is such a thing where the district court is not stating a conclusion that they met their burden the district court is saying I know what the burden is here's how they met it here is the evidence I'm relying on to make the finding I'm making okay your honor where the district court says this is what I have to find I think one example would be at appendix 349 where judge Hogan said I have to find a participant a person who is criminally responsible for the commission of the offense they need not have been convicted that means the person must have committed all the elements of the statutory crime with the requisite mens rea then the district but you got to connect that to supervision correct your honor and I think not just yeah there definitely were participants uh right you've got to connect all of them you keep jumping around I'm not being accusatory I'm just trying to understand what your answer is so you've got to connect all these pieces at least to help me where is it I mean I'm thinking of myself being a district court judge I know what I was going to find here and I'm going to say no they're here are the participants I have in mind whether it's a general group or whether it's individuals those people clearly were supervised by this guy here's what I'm relying on and they clearly had reason to know these were drugs going to the USA where is that finding sure judge so and apologies if I misunderstood your question I'm hearing maybe two parts of the question your honor so the first one in terms of when he more explicitly outlined what he had to find I think part of it's what I just quoted right before that at page 348 of the appendix he says what the circuit held I had to find was that Mr Vega under the guidelines managed or supervised at least one participant who was criminally responsible for the offense in a criminal activity involving five or more participants in terms of him connecting that which I think is the second part of the subsidiary part of your question at the in the appendix at 352 353 354 Judge Hogan goes through testimony from the cooperating witnesses themselves about some of the important things in terms of their supervision I don't think your honor there's I can't point to a line where Judge Hogan says these are the individuals who were supervised but it is clear in context he's referring both to some of the cooperating and also to some of the other individuals who he did supervise who inferentially had this knowledge so that the main the knowledge question it seems like everybody's joined issue on this the knowledge question is whether there was the requisite knowledge among the participants that the drugs were headed to the United States among a supervised participant yes well among the participant yeah and I'm assuming a participant is a supervised participant so that's the necessary question now you know a court can't predict every question that could come up so you're not always going to itemize everything exactly right because you don't know what the inquiry is going to be later on but ideally what you see in the record is something that says that I have I need to find the requisite mens rea for the participants the mens rea standard the mens rea question in this case is whether there was knowledge that the drugs were headed to the United States here's the evidence that leads me to conclude that the requisite knowledge was there and then there would be you know one two three pieces of evidence that support the knowledge on the part of the supervised participants the drugs were headed to the United States I don't think that's in here that's not necessarily to say that the government can't win but I don't think that kind of itemized pointed analysis and determination is in here all right I mean that's that seems to be the nature of the inquiry and you're piecing it's not to say that you can't piece it together it's just to say that it's not as easy to find how it was met now the one question I have is how it was articulated and then met on 352 I'm sorry on 351 352 to 353 at starting at line 15 of 352 the district court says and this is where you started with what I think my colleague rightly said as a conclusion that all the evidence of trial and finding and considering all the evidence of trial and finding the government has met its burden and it's more likely than not that one of the individuals managed and supervised was a participant as required under the guidelines and I'll summarize the evidence briefly that leads me to that conclusion and so that's a correct statement of the conclusion and then the district court summarizes the evidence and the first piece of evidence is that the expert testified that 90 percent of the cocaine consumed in the United States came from Colombia is that a place where you draw the tie that says that here's the standard I've got to find a participant which requires mens rea and the first piece of evidence is that 90 percent of the drugs consumed in the United States come from Colombia exactly your honor and those were the pages 352 353 354 that that more specifically is what that was but then the rest of the the rest of the items on 352 to 354 don't necessarily pertain to whether the drugs were headed to the United States they do pertain to whether Mr. Martinez Vega supervised individuals and there were individuals in his domain who appeared to be individuals who he was working with and who he was overseeing but I didn't see anywhere else that talks about the drugs being headed to the United States agreed your honor and point well taken you know I think Judge Hogan did a good job of repeatedly referencing the totality of the evidence and that he wasn't reviewing everything that was before him the government in its submissions did emphasize some of that evidence some of the evidence that the drugs were that of knowledge that the drugs were headed to exactly judge yes okay okay make sure my colleagues don't have additional questions for you thank you Mr. Richman Mr. Gilbert we'll give you two minutes for your rebuttal thank you your honor um I I do think following up with Judge Edwards question I do think it's between the categories of people we're talking about many of the or several of the re-insertado witnesses who were themselves involved in drug trafficking stated that they knew that the drugs were going to the United States but the issue with respect to those individuals is can Mr. Martinez Vega be fairly said to be supervising them and that's why the second issue that I you are going to adopt essentially the definition of control in the Salinas case is important because that actually requires uh the supervisor to tell the participant what to do when to do it and where to do it one brief example if I may uh there is a place where Parra Diaz talks about having received a written order from Negro Ocasio the head of the 16th front to go and meet Martinez Vega and obtain this war material from him well that's a perfect example of Negro Ocasio telling Parra Diaz what to do when to do and where to do it presumably there were some complementary orders to Martinez Vega to get him to that same spot at the same time but that doesn't mean that Martinez Vega was therefore supervising Parra Diaz um well the problem the one place you do seem to have a problem in terms of the side of the case you're arguing is with uh respect how do you pronounce his name Restrepo your honor absolutely uh lookout and his connections with the defendant and it was clearly it seemed fairly clear to me was being supervised by the defendant and he the evidence suggested that he had he had reason to know the cocaine was going to the United States I don't know what evidence that would be during the time that he was allegedly supervised by Mr. Martinez Vega he was a 14 year old out working on farms to keep an eye out on anything in Bechata that uh would he doesn't get involved in the drug trafficking until much later after he becomes an armed member of the FARC so my argument there is that the mens rea has to coincide with the supervision and with Restrepo I don't think they can do that I don't think they can show that Restrepo had any knowledge at that time he was a miliciano about where the drugs were going that just that was above his pay grade frankly so I don't I don't have any further comments unless the court has any further questions okay thank you counsel thank you to both counsel Mr. Gilbert you're appointed by the court to assist to represent appellant in this matter and the court thanks you for your assistance you're welcome your honor we'll take privilege we'll take privilege
judges: Srinivasan, Rao, Edwards